### LEONARD PRATT'S APPEAL FROM PROBATE.

A collector of town taxes having lost his rate-bill and having no memorandum of what persons had paid him their taxes, his father made an oral offer to the town in town meeting that he would make up any deficiency for which the collector would be liable, if the town would make out a new rate-bill and pay the expense of any litigation that should be necessary in collecting it, which the town voted to do. Held to be a promise to answer for the debt or default of another, and, not being in writing, to be void.

The collector held the office in 1867 and 1868. He had given bond in 1867, but none in 1868. When he received the rate-bill for 1868 there was a large balance due from him to the town for taxes collected on the rate-bill of 1867, and not paid over. He afterwards collected taxes on the rate-bill of 1868 and with the money paid up the balance owed by him on the rate-bill of 1867, being so credited with it by the treasurer of the town. Held that the money paid by him must be treated as paid from his own funds, and that the balance due on the rate-bill of 1867 must be regarded as legally paid.

The father of the collector had as surety signed an official bond with the collector for several years. When the rate-bill for 1868 was given to the collector, the latter signed a bond for that year, and told the treasurer of the town that his father would soon come in and sign it, as he had done in former years, and the treasurer delivered him the rate-bill relying upon his statement. The father did not come in and the matter was forgotten until nearly three years after, when it was discovered that the bond was not signed by the father. He had however until the fact was so discovered supposed that he had signed it. Held that there was no such contract on the part of the father as could be enforced against him in equity.

APPEAL by the administrator of the estate of Gustavus Pratt from the report of commissioners on the estate allow-

ing a claim of the town of Essex against the estate; taken to the Superior court in Middlesex County. The court found the following facts:—

Gustavus W. Pratt, a son of the deceased Gustavus, was duly appointed collector of taxes for the town of Essex, for the years 1865, 1866, 1867 and 1868, respectively. For each of the first three years he gave bond as collector, signed by himself as principal and the said Gustavus as surety. For the year 1868, he signed a like bond, and left the same with the treasurer of said town on the same day, informing him at the time " that his father would call in the afternoon of the same day, and sign the bond, as he had done on each of the previous years." At that time, and relying upon his promise that his father would call and sign the bond, the treasurer delivered to him the rate-bill of 1868.

The collector some time during the spring or summer of 1869 accidentally lost the rate-bill for 1868, and had no memorandum or means of knowing definitely of whom he had collected taxes and of whom he had not, and he claimed that a number of the tax-payers who had heard of the circumstances fraudently pretended that their taxes had been paid.

Gustavus Pratt, deceased, never at any time signed the bond of 1868, but until about the middle of September, 1871, he supposed he had signed the same.

At about said last mentioned date the selectmen of Essex, then in office, discovered that Gustavus Pratt had not signed the bond, and they then pressed him to sign it, or to give his note for the amount of taxes apparently due from the collector, but he declined to do either. At the annual town meeting of the town of Essex, holden on the first Monday of October, 1871, he submitted to the meeting the following proposition:—That if the town would make out a new rate-bill and would sustain the collector in the collection of it, and would pay all the expenses of enforcing the collection and of all litigation connected therewith, he would make up any deficiency in the rate-bill for which the collector would be liable. This proposition was not in writing but was an oral statement. Upon that proposition the town at once passed the

following vote :—" *Voted*, that the selectmen of the town be authorized to assist Gustavus W. Pratt, in collecting the balance due on his rate-bill, he and his father agreeing that such amounts as remain unpaid shall be made good by themselves."

The selectmen of the town gave the collector a new rate-bill, and in the spring and summer of 1872, and after the decease of Gustavus, who died in May, 1872, urged Gustavus W. at various times to proceed to collect the unpaid taxes, and offered to assist him, and to pay the expenses of any litigation he might be obliged to have in making such collections, but nothing further was done by either party with reference to the collection of the taxes.

When the rate-bill for 1868 was given to the collector, which was done on the 2d day of February, 1869, there was due from him to the town and unpaid on the rate-bill of 1867, the sum of $2,530.54, which has never been paid, unless in the manner to be stated.

Between the 2d day of February and the 19th of the same month, the collector paid over to the town treasurer the sum of $2,530.54, which at his request was credited to him by the treasurer on the books of the town, on the rate-bill of 1867, but the money was collected on the rate-bill of 1868, and that amount remains due from the collector on the rate-bill of 1867, unless discharged by this credit.

At the time of the town meeting in October, 1871, there was due from the collector to the town, $4,433.39, including the sum aforesaid of $2,530.54. No part of that sum has ever been paid by the collector, but the whole of the same, with interest from December 31st, 1872, is still due to the town from the collector on the rate-bills of 1867 and 1868.

The estate of said Gustavus, deceased, was represented insolvent, commissioners were appointed thereon, and the claim of the town against the estate was presented to them and by them allowed in full, the whole amount allowed being $4,433.39.

The appellant objected to all evidence as to what was said or agreed to by Gustavus Pratt in the town-meeting, as such

agreement, if made, was an agreement to pay the debt of another, and must therefore be in writing.

The appellee claimed that the facts found showed an agreement on the part of Gustavus Pratt to sign the bond for 1868, and that therefore the commissioners, having full equity powers, justly allowed the entire claim. He also claimed that the agreement made at the town meeting by Gustavus Pratt, was founded on a sufficient consideration, and was not a mere promise to pay the debt of another, but an original undertaking on his part, that if the town would do the thing specified, he on the other hand would pay all such taxes as should not under that arrangement be collected by his son.

Upon these facts the case was reserved for the advice of this court.

*Watrous*, for the appellee.

1. The facts found show that Gustavus Pratt intended to sign the bond for the year 1868 and that Gustavus W. was authorized by him to promise that he would sign it. This therefore presents a plain case, by an agreement by one party to do a certain act, on the faith of which promise another party has done a certain other act, namely, delivered the rate-bill of 1868, which it would not have done but for such promise, and which it is greatly prejudiced by doing unless a court of equity will compel him to bear the responsibility which he had promised to assume. This it is plainly the duty of a court of equity to do. Such a court will treat as done, that which is agreed to be done. 1 Story Eq. Jur., § 64*g*. Commissioners on the estate had all the powers in reference to the claim that courts of law and equity would have. *Beach* v. *Norton*, 9 Conn., 198; *Collins* v. *Tillou*, 26 id., 373; *Am. Board of Commissioners' Appeal from Probate*, 27 id., 344, 353. The Superior Court, on this appeal, has as ample power as the commissioners had. *Davis's Appeal from Probate*, 39 Conn., 395, 401.

2. The equitable obligation of Gustavus Pratt in the premises was a sufficient consideration for a promise made by him

at the town meeting in October, 1871, to make up any deficiency in the rate-bill for which the collector was liable. The acceptance of that proposition by the town made it obligatory on both parties as an original promise and agreement. He agreed that if the town would make out a new rate-bill and sustain the collector in the use of it, and pay the expense of the litigation he might get into, he would make up the deficiency, if any. The town performed in full. We claim that he or his estate must perform his part of the agreement.

3. The collector is in arrear to the amount of $2,530.54, on the rate-bill of 1867. For that year a bond was regularly signed by Gustavus Pratt. That deficiency has never been made up. That amount, due and owing to the town, has never been paid over to its treasurer. And under the bond of 1867, the estate of the deceased is clearly liable for that amount, with interest to the present time. The fact that, at the request of the collector, the treasurer of the town credited on the rate-bill of 1867 this amount, which was in fact collected on the rate-bill of 1868, cannot be construed as a compliance with the requirements ot the bond of 1867, nor as a waiver of such compliance. The treasurer had no power to make such waiver, nor indeed to make such credit, so as to bind the town thereby.

*D. Chadwick* and *C. E. Perkins*, for the appellant.

1. An undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable, is within the statute of frauds, and must be in writing. *Clapp* v. *Lawton*, 31 Conn., 95 ; *Packer* v. *Benton*, 35 id., 350 ; 1 Swift Dig., 248. The proposition of Gustavus Pratt comes exactly within the above definition. He was not before liable on the rate-bill of 1868. He undertook on certain conditions to perform the same duty for Gustavus W. Pratt for which Gustavus W. was then liable, and still continued to be liable. The undertaking was therefore within the statute of frauds, and must be in writing.

2. The liability of the collector on the rate-bill of 1867

was ended.   He paid it in full.   The town had accepted pay-
ment and given credit in full on their books, and the bonds-
man was thereby discharged.   It makes no difference what
money he used to pay it.   *Ingraham* v. *Maine Bank*, 13
Mass., 208; *Coleraine* v. *Bell*, 9 Met., 503; *Sandwich* v.
*Fish*, 2 Gray, 301; *Redfield* v. *Shaver*, 50 Maine, 44; *Lyn-
don* v. *Miller*, 36 Verm., 332; *Olmsted* v. *Bailey*, 35 Conn.,
585.

PARDEE, J.   From the facts detailed we cannot say that
Gustavus Pratt authorized his son to make any contract for
him or in his name with the selectmen of Essex in 1868; the
son merely said that at a subsequent time his father would
make one for himself.

In *Packer* v. *Benton*, 35 Conn., 343, this court said that
an undertaking by a person not before liable, for the purpose
of securing or performing the same duty for which the party
for whom the undertaking is made continues liable, is within
the statute of frauds and must be in writing.   The oral state-
ment of Gustavus Pratt to the town meeting comes within
the terms of this definitiom and must be declared void.

When the rate-bill for 1868 was given to the collector,
namely, on the 2d day of February, 1869, there was due from
him to the town, and unpaid on the rate-bill for 1867, the
sum of $2,530.54; between the 2d and 19th of February,
1869, he paid over to the town treasurer the last named
sum, which at his request was credited to him by the treas-
urer on the books of the town, on the rate-bill of 1867.   This
sum was collected on the rate-bill of 1868.   When the col-
lector received the rate-bills and warrants annexed, he
became obligated to pay over to the treasurer of the town,
within the time prescribed in the warrants, all moneys due
and owing to the town upon the rate-bills entrusted to him.
The specific money received by him in the collection of taxes
is his money, and not that of the town; payments made by
him from time to time must be treated as payments from his
own funds; being collector for 1867 and 1868, and it being
his duty to settle and pay over for both of those years, he

had a right to, and did, appropriate certain payments made in 1869, at the time they were made, to the year 1867. This being the case, and the payment thereof having been received and credited by the town on account of arrearages of taxes of 1867, it cannot be said to be such a misapplication of payment that it should be withdrawn from its original application and applied to the taxes of 1868. *Coleraine* v. *Bell*, 9 Metcalf, 503 ; *Sandwich v. Fish*, 2 Gray, 301 ; *Redfield* v. *Shaver*, 50 Maine, 44 ; *Lyndon* v. *Miller*, 36 Vermont, 332.

Therefore the estate of Gustavus Pratt, deceased, is not liable to the town of Essex upon his suretyship upon the rate-bill for 1867, because the collector made full payment of all money due thereon ; nor upon the rate-bill of 1868, because he entered into no contract of suretyship upon the collector's bond for that year.

This conclusion renders it unnecessary to consider and determine other questions arising in the case.

We advise judgment for the appellant.

In this opinion the other judges concurred.